**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**SYSCO HAMPTON ROADS, INC.,**

**Plaintiff,**

**v.** **Civil No. 2:25cv732**

**COLE WINCHESTER and PERFORMANCE FOOD GROUP, INC., d/b/a PERFORMANCE FOODSERVICE - VIRGINIA,**

**Defendants.**

**OPINION AND ORDER**

Before the Court are motions to dismiss filed by Defendants Cole Winchester, ECF No. 70, and Performance Food Group, Inc., d/b/a Performance Foodservice – Virginia ("PFG"), ECF No. 68. Defendants seek to dismiss claims brought by Plaintiff Sysco Hampton Roads, Inc. ("Sysco"), in its Verified Amended Complaint, ECF No. 67 ("Compl.").

Because the facts and legal questions are adequately presented in the motions and subsequent briefs such that a hearing would not aid in the decisional process, the Court dispenses with oral argument.[1] See Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the following reasons, the motions are each **GRANTED IN PART** with respect to Count IX, which is **DISMISSED**. With respect to all other counts, the motions to dismiss are **DENIED**.

[1] The parties "defer[red] to the Court's judgment as to whether it would be helpful to the Court to have oral argument." ECF No. 78, at 1.

## I. BACKGROUND[2]

Sysco, "a leading distributor of food and related products," employed Mr. Winchester in its sales department for more than a decade. Compl. ¶¶ 9, 14, 36. While working at Sysco, Mr. Winchester could access "Sysco's confidential information and trade secrets regarding Sysco's customers and its business strategies, operations, pricing, costs, margins, rebates and incentives, customer lists, preferences, and purchasing habits." Id. ¶ 37. During his Sysco tenure, Mr. Winchester repeatedly agreed, by entering into "Protective Covenants Agreements," that he would "refrain from using or disclosing" such information "in a way that would harm Sysco." Id. ¶ 41. These same agreements ostensibly restrained Mr. Winchester, "for a year and a half following the end of his employment with Sysco," from soliciting certain Sysco customers or working for a nearby competitor. Id.

Mr. Winchester departed Sysco on September 5, 2025. Id. ¶ 62. In the preceding months, he had communicated on at least three occasions with a representative of PFG, a Sysco competitor "engaged in the business of foodservice and food distribution to customers in Virginia, Maryland, and North Carolina." Id. ¶¶ 10, 61. These communications culminated in an offer of employment, which Mr. Winchester accepted. Id. ¶ 61. According to Sysco, this was not

[2] The allegations detailed here for purposes of deciding these motions to dismiss are taken from the complaint and do not represent factual findings by the Court. See Turner v. Thomas, 930 F.3d 640, 644 (4th Cir. 2019).

the first occurrence of its kind; in recent years, "PFG has relentlessly recruited Sysco employees, inducing them to quit and bring Sysco business with them to PFG." Id. ¶¶ 28-35 (recounting examples of "employees absconding with Sysco confidential information and feeding that information to PFG").

In the weeks between accepting his new role at PFG and resigning from Sysco, Mr. Winchester, without Sysco's knowledge, "informed Sysco customers that he was leaving Sysco for PFG." Id. ¶ 63. He also "began feeding himself Sysco's trade secrets and other confidential information in anticipation of his departure." Id. In particular, "without authorization," Mr. Winchester sent to his personal e-mail account "Sysco's confidential information," including "customer lists," detailed "customer documents and information," "buying practices," and "internal reports developed by Sysco." Id. ¶ 65. Mr. Winchester also forwarded at least some of this information, while still employed by Sysco, "to his future supervisor, PFG's vice president of sales." Id. ¶ 67.

On September 8, 2025, days after his departure from Sysco, Mr. Winchester began working for PFG. Id. ¶¶ 61, 72. However, for more than a month, Mr. Winchester "used credentials that he had obtained while employed at Sysco to access" Sysco's "Shop" sales platform hundreds of times. Id. ¶¶ 81, 95. By doing so, Mr. Winchester was able "to access information about 19 of Sysco's customers, including a history of customer orders, customer-

specific product lists, and detailed pricing information," and to "transfer[] this confidential information about his former Sysco customers outside of the Shop interface." Id. ¶¶ 95-99.

Sysco claims that it soon suffered harm. Just "three days" after Mr. Winchester left Sysco, on his first day at PFG, a customer with whom he had worked "ceased placing orders with Sysco." Id. ¶ 72. The next month, a "long-time" customer with whom Mr. Winchester had worked notified Sysco "that it would no longer be ordering products from Sysco and would be buying products from PFG." Id. ¶ 69. This followed a meeting between the customer and PFG during which PFG presented "detailed pricing, rebate, and incentive information that was suspiciously close to Sysco's own pricing, rebates, and incentives." Id. ¶ 70. PFG representatives also used Sysco's "confidential information," which they allegedly obtained from Mr. Winchester, to solicit another customer "in or about September 2025," invoking Mr. Winchester's "impending employment with PFG as a selling point." Id. ¶ 74.

Sysco sent a "cease and desist letter" to Mr. Winchester and PFG on October 23, 2025, "requesting that they immediately cease using Sysco's confidential information," to no avail. Id. ¶ 76.

## II. PROCEDURAL HISTORY

Sysco filed its original complaint for injunctive relief and damages, along with a motion for a temporary restraining order ("TRO"), on November 10, 2025. ECF Nos. 1, 5. After the TRO

motion was denied, ECF No. 15, Sysco moved instead for a preliminary injunction, ECF No. 18. Defendants then filed motions to dismiss Sysco's original complaint. ECF Nos. 26, 29.

At a hearing held on December 22, 2025, the then-presiding judge[3] granted the motions to dismiss as to Count I, which alleged violations of the federal Defend Trade Secrets Act. ECF No. 50, at 35:9-11. The Court explained that Sysco had failed to allege either that the asserted trade secrets were "secret with respect to customers or suppliers" or "that customers or suppliers themselves [we]re required to keep the information secret." Id. at 36:13-37:3. Having dismissed the sole federal-question claim, and absent "complete diversity," the Court "decline[d] to exercise supplemental jurisdiction over the remaining claims." Id. at 4:5-17, 35:12-36:8; ECF No. 48.

On December 29, 2025, Sysco sought leave to file an amended complaint. ECF Nos. 51. Attached to the supporting memorandum were Sysco's proposed amended complaint and Exhibits A through J thereto. ECF Nos. 52-1 to 52-11. Sysco also filed unredacted versions of Exhibits A, F, G, and I under seal. See ECF No. 63 (granting Sysco's motion to seal). Although Sysco's proposed amended complaint included a prayer for interim relief, it was not accompanied by any new motion seeking such relief.

[3] This case was reassigned to the undersigned on May 6, 2026.

On April 15, 2026, the Court granted Sysco leave to file its proposed amended complaint.[4] See ECF No. 66. The instant motions to dismiss soon followed. ECF Nos. 68, 70. Sysco filed memoranda in opposition, ECF Nos. 74, 75, to which Defendants replied, ECF Nos. 76, 77. The motions are now ripe for disposition.

## III. LEGAL STANDARDS

A defendant may move to dismiss a complaint, in whole or in part, based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). If a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" it must be dismissed. Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (construing Fed. R. Civ. P. 8(a)(2)); see Turner v. Thomas, 930 F.3d 640, 644 (4th Cir. 2019). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" suffice. Id.

---

[4] Upon granting Sysco leave to amend, the Court directed the Clerk to refile Sysco's proposed amended complaint, ECF No. 52-1, as the amended complaint, ECF No. 67. See ECF No. 66. The Court did not direct the Clerk to refile Sysco's exhibits, but they remain on the docket where Sysco originally filed them. See ECF Nos. 52-2 to 52-11; ECF Nos. 56, 57, 58, 59 (under seal).

The Court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the plaintiff." Turner, 930 F.3d at 644. But the Court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." Id. (citation omitted). Along with the allegations in the complaint, the Court "consider[s] documents that are explicitly incorporated into the complaint by reference" or attached as exhibits. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016) (citations omitted).

## IV. DISCUSSION

PFG moves to dismiss five of Sysco's claims,[5] ECF No. 68, and urges the Court not to exercise supplemental jurisdiction over any of Sysco's state-law claims, see ECF No. 69, at 2 n.1. Meanwhile, Mr. Winchester moves to dismiss "all claims against" him,[6] ECF No. 70, adopting "the portions of PFG's brief" that support his own motion, ECF No. 71, at 5. The Court begins with Count I.

### A. Count I: Defend Trade Secrets Act

Count I alleges trade-secret misappropriation in violation of the federal Defend Trade Secrets Act ("DTSA"). Compl. ¶¶ 128-33.

[5] Counts (I) trade-secret misappropriation under the federal Defend Trade Secrets Act, (II) an analogous violation of the Virginia Uniform Trade Secrets Act, (VII) tortious interference with contract, (VIII) business conspiracy, and (IX) violation of the federal Computer Fraud and Abuse Act.

[6] Counts I, II, VIII, and IX, plus (III) breach of contract, (IV) unjust enrichment, (V) breach of fiduciary duty, and (VI) violation of the Virginia Computer Crimes Act.

According to Sysco, Mr. Winchester is directly liable "for his unauthorized copying, transmission, and communication of Sysco's trade secrets." Id. ¶ 128. And PFG is liable directly, "for receiving and possessing" those trade secrets, id. ¶ 129, and vicariously, for Mr. Winchester's misappropriation "while employed by PFG," id. ¶ 130. Both are liable, Sysco contends, "for conspiring to misappropriate Sysco's trade secrets." Id. ¶ 131.

The DTSA authorizes the "owner of a trade secret that is misappropriated" to seek remedies by "bring[ing] a civil action." dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 141 (4th Cir. 2023) (quoting 18 U.S.C. § 1836(b)(1)). "To state a viable DTSA claim, a plaintiff must plausibly allege that (1) it owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce." Samuel Sherbrooke Corp., Ltd v. Mayer, 159 F.4th 252, 256 (4th Cir. 2025) (citing Sysco Mach. Corp. v. DCS USA Corp., 143 F.4th 222, 228-29 (4th Cir. 2025)). Defendants contend that Sysco fails to allege the first and second of these elements.[7]

**1. Sysco's Trade Secrets**

Information is a "trade secret," as defined by the DTSA, "if (1) its owner 'has taken reasonable measures to keep [it] secret' and (2) it 'derives independent economic value' from its secrecy."

[7] Mr. Winchester argued that Sysco's original complaint inadequately alleged the third element, ECF No. 30, at 6-7, but neither he nor PFG argues as much here. Regardless, the third element is satisfied. See Compl. ¶¶ 14, 126.

Samuel Sherbrooke, 159 F.4th at 256 (quoting 18 U.S.C. § 1839(3)). "All forms and types of financial, business, scientific, technical, economic, or engineering information . . . can qualify for protection" under the DTSA, provided that both of these requirements are satisfied. Cap. One Fin. Corp. v. Sykes, No. 3:20cv763, 2021 WL 2903241, at *11 (E.D. Va. July 9, 2021) (citation modified); see also Chmura Econ. & Analytics, LLC v. Lombardo, No. 3:19cv813, 2021 WL 3234607, at *14 (E.D. Va. July 29, 2021) ("[J]ust about anything can constitute a trade secret under the right set of facts." (quoting MicroStrategy, Inc. v. Bus. Objects, S.A., 331 F. Supp. 2d 396, 416 (E.D. Va. 2004))).

Courts applying this standard or its state-law precursors[8] "have long recognized that 'a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.'" AirFacts, Inc. v. de Amezaga, 909 F.3d 84, 96 (4th Cir. 2018) (citation omitted) (describing charts based on a "painstaking, expert arrangement" of data as "inherently valuable separately and apart from the publicly available contents"); see also MicroStrategy,

[8] Because "states' versions of the Uniform Trade Secrets Act" served as "model[s]" for the DTSA, cases interpreting state laws may also inform the DTSA's interpretation. Chmura, 2021 WL 3234607, at *14 n.23 (quoting Steves & Sons, Inc. v. JELD-WEN, Inc., 988 F.3d 690, 726-27 (4th Cir. 2021)).

331 F. Supp. 2d at 417 (explaining that "a compilation of public facts can also constitute a trade secret if the compilation itself has remained confidential"); Chmura, 2021 WL 3234607, at *15 (same). For example, compiled customer or client information may qualify as a trade secret. Variable Annuity Life Ins. Co. v. Coreth, 535 F. Supp. 3d 488, 513-15 (E.D. Va. 2021); dmarcian, 60 F.4th at 141 (holding that a "customer database," "business accounts," and "list of sales leads" were "likely trade secrets"). So too may sales, order, cost, and pricing information. See, e.g., Laz Karp Assocs., Inc. v. Starre, No. 1:25cv2111, 2025 WL 3562612, at *6 (E.D. Va. Dec. 12, 2025) (finding that trade-secret protection under the DTSA could extend to "cost information" and "estimated revenues"); Hilb Grp. of New England, LLC v. Lavorgna, No. 3:24cv462, 2024 WL 3234060, at *5 (E.D. Va. June 28, 2024) (same, to "pricing" and customer information); Philips N. Am. LLC v. Hayes, No. 1:20cv1409, 2020 WL 5407796, at *8-10 (D. Md. Sept. 9, 2020) (same, to "customers, orders, pricing and sales initiatives" (citation omitted)); Cont'l Indus. Grp., Inc. v. Altunkilic, 788 F. App'x 37, 41 (2d Cir. 2019) (noting that such information "is routinely afforded trade secret protection").

Here, Sysco identifies several compilations of information as relevant trade secrets.[9] Compl. ¶ 110. First, Sysco points to

[9] The Court focuses on the information allegedly compiled in or attached to each e-mail Sysco identifies; the e-mails, as "vehicle[s] for expressing information," are unlikely to be trade secrets themselves, though they "may

"two spreadsheets" that Mr. Winchester sent "to his personal email address" on August 14, 2025. Id.; see ECF No. 57 (under seal). These "SalesTrack" spreadsheets compiled "detailed order information from May 1, 2025, to August 14, 2025, for each Sysco customer Winchester worked with." Compl. ¶ 110. Next, Sysco cites a pair of spreadsheets that Mr. Winchester sent "to his personal email address" on August 10, 2025. Id.; see ECF No. 58 (under seal). One of these spreadsheets, the "'Weekly Call Sheet Worksheet,' contained detailed notes on customers Winchester worked with," such as "pricing terms" and sales data. Compl. ¶ 110. This spreadsheet was also attached to an August 11, 2025, e-mail that Mr. Winchester sent to a PFG employee. Id. ¶¶ 67, 110. The other spreadsheet, an "OYSTER LIST," was a compilation of oyster-related supplier and sales data, including the cost to Sysco and to customers of various oysters. Id. ¶ 110. Finally, Sysco identifies as a trade secret the compilation of data "contained within Shop, including . . . individual pricing, product preferences, order history, and/or invoices" for "19 customers Winchester formerly serviced at Sysco." Id. ¶ 110.

Notwithstanding the foregoing, PFG claims that Sysco "fails to allege the existence of a trade secret with sufficient particularity." ECF No. 69, at 10. The Court does not share this

---

contain trade secrets." Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 678 (E.D. Va. 2004).

view, which appears to rest in part on PFG's mistaken derision of Sysco's "information and belief" pleading.[10] See id. at 12. Sysco's allegations are sufficient to demonstrate, as to each asserted trade secret, the requisite (1) "reasonable secrecy" and (2) "independent economic value." Synopsys, Inc. v. Risk Based Sec., Inc., 70 F.4th 759, 769 (4th Cir. 2023).

First, Sysco adequately alleges that it has taken a variety of reasonable measures to ensure that its asserted trade secrets remain secret, notwithstanding that they comprise (in part) public information. To begin, the "SalesTrack" spreadsheets were generated by Mr. Winchester using "a Sysco system called Vision to which only Sysco sales employees have access." Compl. ¶ 110. Even among sales employees, "very few" were authorized to "run a report independently." Id. The "compilation[s] of information" in the "Weekly Call Sheet Worksheet" and the "OYSTER LIST" were similarly "only made available to Sysco sales employees," not "customers, suppliers, or any other third parties." Id. Sysco claims to take a variety of other measures to protect such information, including physically securing its premises; compartmentalizing employee access; and using "reasonable cybersecurity measures." Id. ¶ 18.

[10] "[F]actual 'allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible.'" Lowy v. Daniel Def., LLC, 167 F.4th 175, 199 & nn.12-13 (4th Cir. 2026) (citation omitted); accord Ridenour v. Multi-Color Corp., 147 F. Supp. 3d 452, 456 (E.D. Va. 2015).

Outside of Sysco, "some" (but not all) "of its customers" and "a large portion of its suppliers" are bound by confidentiality and non-disclosure agreements, respectively. Id. ¶¶ 21-27. As for the "proprietary Shop system," Sysco explains that its "Terms of Use . . . require all users to maintain the strictest confidence." Compl. ¶ 123. More importantly, "[r]egardless of whether Sysco has a written agreement in place with a respective customer, Sysco structures its pricing and incentive arrangements to be unique to each customer and their needs." Id. ¶ 24. The Court can therefore reasonably infer that "one customer's knowledge of its own pricing and incentives would not allow it to glean information about any other customer's pricing or incentives." ECF No. 74, at 18; see AirFacts, 909 F.3d at 96. Taken as true, Sysco's allegations suffice to demonstrate that Sysco kept the compilations of information at issue here reasonably secret by "ma[king] it difficult for others to acquire" them "through proper means." Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 664 (4th Cir. 1993); Chmura, 2021 WL 3234607, at *16 (noting that reasonable secrecy "need not be overly extravagant, and absolute secrecy is not required" (citation omitted)).

Second, Sysco also adequately alleges that the compilations of information in question "'derive[] independent economic value' from [their] secrecy." Samuel Sherbrooke, 159 F.4th at 256 (quoting 18 U.S.C. § 1839(3)). According to Sysco, "[t]his

information allows Sysco to maintain and expand its valuable business relationships with customers" and "find and source" products for customers with greater "efficiency." Compl. ¶¶ 37, 116. Sysco also claims that "a competitor who came to possess this information would" improve their "odds of prying [customers'] business from Sysco." Id. ¶ 37.

Such allegations amply plead the independent economic value of Sysco's alleged trade secrets based on "the competitive advantage over others that [Sysco] enjoys by virtue of its exclusive access" to those secrets. Sysco Mach., 143 F.4th at 228 (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1012 (1984)); see also OROS, Inc. v. Dajani, No. 1:19cv351, 2019 WL 2361047, at *4 & n.5 (E.D. Va. June 4, 2019) ("Were competitors to learn exactly which companies [the plaintiff] has targeted with which equipment and at what price, those competitors could systematically underbid or outmaneuver [the plaintiff] and thus gain an economic advantage."); Variable Annuity, 535 F. Supp. 3d at 513-14 (similar).

In sum, Sysco has adequately alleged that it owns various compilations of information that derive independent economic value from reasonable secrecy and thus qualify as trade secrets. Samuel Sherbrooke, 159 F.4th at 256. The Court therefore turns to consider Sysco's allegations that Defendants misappropriated those trade secrets.

**2. Misappropriation**

Misappropriation, the second element of a DTSA claim, "involves 'acquisition,' 'disclosure,' or 'use' of a trade secret by 'improper means' or without consent." Sysco Mach., 143 F.4th at 229 (quoting 18 U.S.C. § 1839(5)). Because the text of the statutory definition is "disjunctive," the misappropriation element of a DTSA claim is satisfied for motion-to-dismiss purposes where the complaint "plausibly pleads an improper acquisition of trade secrets," even without allegations of disclosure or use. AUA Priv. Equity Partners, LLC v. Soto, No. 1:17cv8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018). By the same token, if a defendant "disclos[es]," "use[s]," or "act[s] on" a trade secret, even if he himself "did not utilize 'improper means' to acquire" it, "liability will result." MicroStrategy, 331 F. Supp. 2d at 417. Furthermore, pleading misappropriation does not require a plaintiff to allege "outright theft"; for example, misappropriation "can occur when an employee formerly entrusted with trade secret information uses or discloses that information after 'the agency or fiduciary relationship between him' [or her] and [the employer] ha[s] ended.'" Variable Annuity, 535 F. Supp. 3d at 513 (quoting OROS, 2019 WL 2361047, at *5).

The Court begins with Sysco's allegations of misappropriation against Mr. Winchester. The amended complaint details specific trade secrets that Mr. Winchester sent to his personal e-mail

address without Sysco's authorization, contrary to Mr. Winchester's obligations to protect such information. Compl. ¶¶ 50, 65-67. Mr. Winchester also accessed the "Shop" system "without Sysco's consent." Id. ¶¶ 91-102. Acquiring trade secrets by such improper means "constitutes actual or threatened misappropriation under the DTSA," as "[c]ourts in the Fourth Circuit have routinely held." Laz Karp, 2025 WL 3562612 at *7.

Sysco's misappropriation allegations are also sufficient to sustain its DTSA claim against PFG. Mr. Winchester's acts of misappropriation allegedly began soon "after he accepted employment with PFG," which would support Sysco's claim that PFG itself "acquired the trade secrets by improper means by inducing Winchester to breach his duty to maintain their secrecy." Compl. ¶¶ 65, 149. Moreover, even if PFG "did not utilize 'improper means' to acquire" Sysco's trade secrets, MicroStrategy, 331 F. Supp. 2d at 417, PFG allegedly "use[d]" such secrets to solicit Sysco's customers. See, e.g., Compl. ¶¶ 70-72. With all reasonable inferences drawn in Sysco's favor, as they must be when the Court is considering a motion to dismiss, such allegations state a direct-liability claim against PFG. Cf. OROS, 2019 WL 2361047, at *4 n.5 ("[Defendant] will have at his disposal detailed interrogatories and other tools of the discovery process to further ascertain the exact nature of plaintiff's claims.").

Sysco has also stated a viable vicarious liability claim against PFG. Compl. ¶ 130. "[A]n employer can be liable for trade secret misappropriation committed by an employee acting within the scope of his employment through the doctrine of respondeat superior." MicroStrategy, 331 F. Supp. 2d at 418; see S. Tr. Mortg., LLC v. Movement Mortg., LLC, No. 2:24cv653, 2025 WL 1447379, at *6 (E.D. Va. May 20, 2025) (adopting widespread view that the DTSA provides for respondeat superior liability). PFG does not seem to contest this rule, arguing instead that "Sysco does not allege how Winchester's alleged access of Shop" while employed by PFG "could possibly have been in 'the scope of his employment.'" ECF No. 69, at 16 (quoting Compl. ¶ 130).

Conduct may have been in the scope of employment "if (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the employee to do the act upon his own account." Newport News Indus. v. Dynamic Testing, Inc., 130 F. Supp. 2d 745, 750 (E.D. Va. 2001) (citation omitted). Here, although Sysco alleges that Mr. Winchester "impermissibly sent" himself most of Sysco's asserted trade secrets before "his

departure from Sysco," Compl. ¶ 78, the Court can — in fact, the Court must, Turner, 930 F.3d at 644 — reasonably infer from the amended complaint that Mr. Winchester later used and thus misappropriated those trade secrets in connection with his sales efforts during his PFG employment. See, e.g., Compl. ¶¶ 76-80. Sysco also alleges that Mr. Winchester accessed Shop nearly 700 times during his PFG employment, with such access closely coinciding with PFG's successful conversion of former Sysco customers. Id. ¶¶ 94-98. Taking Sysco's allegations as true, it is certainly plausible to construe these alleged acts as "incident" and beneficial to PFG's business. Newport News, 130 F. Supp. 2d at 750; cf. Eden Hannon & Co. v. Sumitomo Tr. & Banking Co., 914 F.2d 556, 562 (4th Cir. 1990) (underscoring the difficulty of an employee "avoiding th[e] use" of "his former employer's trade secrets in [a] new employer's workplace"). As such, PFG's sole retort to Sysco's vicarious liability claim fails to persuade.

* * *

Sysco has sufficiently pled each element of its DTSA claims against both Mr. Winchester and PFG.[11] See Samuel Sherbrooke, 159 F.4th at 256. Because each of Sysco's state claims "'derive[s]

---

[11] In addition to the arguments addressed above, Mr. Winchester submits that Sysco's DTSA claim, among others, must be dismissed because Sysco "fails to plead sufficient facts supporting a claim for damages." ECF No. 71, at 13; id. at 17-20. However, except as to Count IX, discussed infra, Sysco's damages allegations are sufficient. Compl. ¶¶ 68-73, 78-80 (alleging that Defendants diverted Sysco's customers, causing Sysco to lose business).

from' the same 'nucleus of operative fact' as" Sysco's federal DTSA claims, the Court may exercise "supplemental jurisdiction" over the state claims. Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 27 (2025) (citation omitted); 28 U.S.C. § 1367. At this stage of the proceedings, and in the circumstances of this case, the Court finds that doing so will best serve "the values of judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) (citation omitted). The Court therefore proceeds to address the remaining counts of Sysco's amended complaint.

**B. Count II: Virginia Uniform Trade Secrets Act**

Count II alleges trade-secret misappropriation by both Defendants in violation of the Virginia Uniform Trade Secrets Act ("VUTSA"). As all parties seem to agree, see ECF No. 69, at 9; ECF No. 71, at 14; ECF No. 74, at 14-15, the "applicable standards under the DTSA and the VUTSA are nearly identical." Am. Conservative Union v. Inst. for Legis. Analysis, No. 1:24cv500, 2025 WL 510236, at *8 (E.D. Va. Feb. 13, 2025) (citation modified); see Synopsys, 70 F.4th at 769 (noting that "[t]he Virginia and federal definitions of 'trade secret' are of a piece"). Like the federal DTSA, the VUTSA broadly defines "trade secret" to include "any information that provides actual or potential economic value to those who rightfully possess it and that is not 'readily ascertainable' through legitimate means by others 'who can obtain

economic value from'" the "'disclosure or use' of the information, so long as the rightful possessor of the information has taken 'reasonable' steps under the circumstances to maintain the secrecy of the information." Appian Corp. v. Pegasystems, Inc., 924 S.E.2d 621, 635 (Va. 2026) (quoting Va. Code § 59.1-336). The federal and state definitions of misappropriation are also similar; the VUTSA requires a plaintiff to establish "(1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff." Variable Annuity, 535 F. Supp. 3d at 513; accord MicroStrategy Inc. v. Li, 268 Va. 249, 263, 601 S.E.2d 580, 589 (2004).

Sysco's amended complaint satisfies these "nearly identical" VUTSA standards "[f]or substantially the same reasons" that it satisfies the DTSA standards. Variable Annuity, 535 F. Supp. 3d at 514. "Because the information at issue qualifies for protection as a trade secret" under Virginia as well as federal law, "and because [Defendants'] conduct amounts to" misappropriation under VUTSA, the motions to dismiss Count II are unavailing. Id.

**C. Count III: Breach of Contract**

Count III alleges that Mr. Winchester "has breached his contractual obligations to Sysco" under the Protective Covenants Agreement ("PCA") that he signed, most recently, in 2023. Compl. ¶¶ 154-65; see ECF No. 52-6. In the PCA, Mr. Winchester agreed that he would not "engag[e] in any unauthorized use or disclosure of Sysco's confidential information." Compl. ¶ 157 (citing PCA §§ 2.2, 2.3). He also agreed that, for eighteen months following his departure from Sysco, he would limit his solicitation of Sysco's customers and avoid working for Sysco's local competitors. Id. ¶¶ 158-59 (citing PCA §§ 3.3, 3.4). Nevertheless, according to Sysco, Mr. Winchester is working for a Sysco competitor and using Sysco's "confidential and trade secret information" in violation of the PCA and to Sysco's detriment. Id. ¶¶ 160-62.

In moving to dismiss Count III, Mr. Winchester leads with "a threshold matter": choice of law. ECF No. 71, at 14. The PCA unambiguously provides that Texas law "will govern the Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties."[12] PCA § 5(f). Based on this provision,

[12] The same section of the PCA wherein the choice-of-law provision is found also appears to include a forum-selection clause, according to which "[t]he exclusive forum and venue for any legal action arising from this Agreement that can be pursued in a court of law will be a court of competent jurisdiction in Houston, Texas." PCA § 5(g). The Court does not address this clause here because no party has invoked it. Cf. directPacket Rsch., Inc. v. Polycom, Inc., No. 2:18cv331, 2019 WL 8065832, at *3-4 (E.D. Va. July 3, 2019) (analyzing waiver of enforcement of a forum-selection clause).

Sysco maintains that "the parties' contractual dispute is governed by Texas law." ECF No. 75, at 14. But in Mr. Winchester's view, this choice-of-law provision should not be enforced, and Virginia law should instead apply, because "imposing Texas law on the PCA analysis would potentially result in some level of enforcement in Virginia in a manner contrary to Virginia's public policy." ECF No. 71, at 15. Under Virginia law, Mr. Winchester argues, "[t]he overly broad, vague and ambiguous provisions that permeate the restrictions Sysco seeks to enforce are facially defective and unenforceable." ECF No. 76, at 9.

The Court "need not resolve the choice-of-law question, as it makes no discernible difference" to the disposition of Mr. Winchester's motion to dismiss. World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., 783 F.3d 507, 514-15 (4th Cir. 2015). Mr. Winchester's argument for dismissal under Virginia law is "premature." Eagle Paper Int'l, Inc. v. Cont'l Paper Grading Co., 726 F. Supp. 3d 541, 549 (E.D. Va. 2024). Virginia law requires "[e]ach case involving the enforceability of a restraint on competition" in an employment agreement to "be determined on its own facts." Assurance Data, Inc. v. Malyevac, 286 Va. 137, 144, 747 S.E.2d 804, 808 (2013) (citation omitted). As such, a motion to dismiss "cannot be used to decide on the merits whether a restraint on competition is enforceable." Eagle Paper, 726 F. Supp. 3d at 548 (quoting Assurance Data, 286 Va. at 139, 747 S.E.2d

at 805); see also Empower AI, Inc. v. Dillahay, No. 1:24cv83, 2024 WL 4351437, at *6 (E.D. Va. Sept. 30, 2024) ("Several courts have interpreted Assurance Data as heavily disfavoring facial challenges to restrictive covenants at the motion to dismiss stage, if not categorically barring such challenges").

Mr. Winchester cites one unpublished Virginia Circuit Court opinion postdating Assurance Data for the proposition that "[w]here restrictive language is facially ambiguous or there are other defects that evidence cannot cure, dismissal is warranted." ECF No. 71, at 17 (citing Reading & Language Learning Ctr. v. Sturgill, 94 Va. Cir. 94, 105, 2016 WL 10880215, at *9 (Fairfax Cnty. 2016)). But that opinion is difficult to reconcile with Assurance Data's rejection of the "assertion that a restraint on competition can be found unenforceable as a matter of law without the presentation of evidence." 286 Va. at 145 n.2, 747 S.E.2d at 808 n.2; see also Lumber Liquidators, Inc. v. Cabinets To Go, LLC, 415 F. Supp. 3d 703, 716 (E.D. Va. 2019) ("[T]he Supreme Court of Virginia has strongly indicated that the reasonableness of a restriction on trade cannot be resolved on the pleadings." (citing Assurance Data, 286 Va. at 144, 747 S.E.2d at 808)).

Furthermore, "even if Assurance Data did not completely foreclose facial attacks on restrictive covenants," Lumber Liquidators, 415 F. Supp. 3d at 717, the language of the PCA does not here present, as Mr. Winchester argues, facial "defects" so

severe "that evidence cannot cure" them, ECF No. 71, at 17. The PCA's terms are allegedly limited in functional, geographical, and durational scope, see Compl. ¶¶ 50-60, 154-165, leaving open the possibility that Sysco could "present evidence to demonstrate that the restraints are no greater than necessary to protect its legitimate business interests, are not unduly harsh or oppressive . . . and are reasonable in light of sound public policy." Assurance Data, 286 Va. at 145, 747 S.E.2d at 809.

Thus, even if Virginia law applies, the better course is to wait to "determine the reasonableness of the covenants in light of the circumstances of this particular case," Empower AI, 2024 WL 4351437, at *6 (citation omitted), with the benefit of "further factual developments through the discovery process," Eagle Paper, 726 F. Supp. 3d at 549. And, as Sysco observes, Mr. Winchester "does not press any argument for dismissal under Texas law." ECF No. 75, at 14. Accordingly, under either state's law, Mr. Winchester fails to justify the dismissal of Count III.

**D. Count IV: Unjust Enrichment**

Count IV alleges that Mr. Winchester "has been unjustly enriched" because he "has used and disclosed . . . Sysco's confidential and trade secret information" in violation of his Agreements with Sysco but "has not reimbursed Sysco for the equity

and monetary awards" he received pursuant to those Agreements.[13] Compl. ¶¶ 168-75. Mr. Winchester contends that, under Virginia law, Sysco may not raise this "quasi-contractual claim at the same time that it asserts one or more express 'Agreements.'" ECF No. 71, at 18.

In Virginia, "an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." CGI Fed. Inc. v. FCi Fed., Inc., 295 Va. 506, 519, 814 S.E.2d 183, 190 (2018) (citing Southern Biscuit Co. v. Lloyd, 174 Va. 299, 311, 6 S.E.2d 601, 606 (1940)). This general principle, however, is subject to certain "limitations." James G. Davis Constr. Corp. v. FTJ, Inc., 298 Va. 582, 593, 841 S.E.2d 642, 648 (2020). "For example, unjust enrichment is not precluded where 'a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations.'" Id. (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c (2011)); cf. Amazon.com, Inc. v. WDC Holdings LLC, 155 F.4th 313, 328-29 (4th Cir. 2025) (deeming unjust enrichment claims not to be precluded where the claims were "not confined to the contracts" (citation omitted)). This Court has therefore explained that "a plaintiff may allege alternative claims for breach of contract and

[13] The amended complaint also includes a claim of unjust enrichment against PFG, but PFG's motion to dismiss does not challenge it.

unjust enrichment despite the legal impossibility of recovery under both" if "the validity of the contract is challenged." Colonna's Shipyard, Inc. v. Coastal Cement Corp., No. 2:22cv395, 2023 WL 3321734, at *3-5 (E.D. Va. May 9, 2023). Here, since Mr. Winchester argues that the terms of the PCA are "unenforceable," ECF No. 71, at 15, Sysco may plead an alternative unjust enrichment claim. See Colonna's Shipyard, 2023 WL 3321734 at *3.

Mr. Winchester also briefly asserts that "Sysco has failed to identify recoverable damages with any reasonable particularity." ECF No. 71, at 18. This argument is both incorrect, see supra note 11, and based on a mistaken premise, for "the touchstone of unjust enrichment is a defendant's gain," not "a plaintiff's loss." Baehr v. Creig Northrop Team, P.C., 953 F.3d 244, 257 (4th Cir. 2020). Sysco specifically identifies Mr. Winchester's alleged gain: the "equity and monetary awards." Compl. ¶¶ 169, 174-77.

Lastly, Mr. Winchester suggests in his reply that Sysco does not "allege facts explaining how Winchester was 'unjustly enriched' as an alternative theory to its contract-based claims." ECF No. 76, at 9. With respect to form, Sysco was not required to "use specific words to indicate that it is pleading an alternative claim." SourceOne, Inc. v. ESI, Inc., No. 3:19cv907, 2020 WL 4283927, at *3 (E.D. Va. July 27, 2020). As for substance, Mr. Winchester fails to explain which of the elements of unjust enrichment, in his view, Sysco "has not pled." ECF No. 76, at 10.

The Court will not dismiss this claim based on such a "skeletal argument." Jamison v. Kincaid, No. 3:19cv19, 2020 WL 5414687, at *3 (E.D. Va. Sept. 9, 2020) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

**E. Count V: Breach of Fiduciary Duty**

Count V alleges that Mr. Winchester "breached his fiduciary duties to Sysco by using and continuing to use Sysco's confidential and trade secret information for his own benefit and gain" and "by failing to adequately protect and manage" such information. Compl. ¶¶ 180-82. Mr. Winchester contends that this claim must be dismissed under the "source-of-duty rule" because Sysco "fails to allege any fiduciary duties outside of the express contractual relationship alleged to exist between Sysco and Winchester." ECF No. 71, at 19 (quoting Tingler v. Graystone Homes, Inc., 298 Va. 63, 83, 834 S.E.2d 244, 255 (2019)).

In Virginia, "certain conduct by an employee during the term of his employment," including trade-secret misappropriation, "will clearly constitute a breach of the duty of loyalty he owes to his employer." Williams v. Dominion Tech. Partners, L.L.C., 265 Va. 280, 291, 576 S.E.2d 752, 758 (2003). After "[r]esignation or termination," liability for breaches of an employee's "fiduciary obligations" may continue with respect to transactions "which began during the existence of the relationship or that were founded on information gained during the relationship." Today Homes, Inc.

v. Williams, 272 Va. 462, 474, 634 S.E.2d 737, 744 (2006) (citations omitted); accord M Corp v. Infinitive, Inc., No. 1:24cv1823, 2024 WL 4696132, at *4-5 (E.D. Va. Nov. 6, 2024).

Sysco alleges that Mr. Winchester owed and breached such fiduciary duties, to Sysco's detriment. See Compl. ¶ 179 (alleging that Mr. Winchester "owed fiduciary duties to Sysco" based on "his contractual relationship and the positions of trust and confidence that he occupied with Sysco" (emphasis added)); id. ¶ 183 ("Sysco has been damaged as a proximate result of Winchester's breaches of fiduciary duties, including but not limited to his involvement in improperly converting the business of at least three Sysco customers to PFG."). To be sure, Sysco also invokes Mr. Winchester's express contractual duties. Id. But "an express written agreement adding" duties does not "eliminate[] the baseline common-law duties" that Mr. Winchester is also alleged to owe. Depuy Synthes Sales, Inc. v. Jones, No. 2:13cv392, 2014 WL 1165852, at *6 (E.D. Va. Mar. 21, 2014); cf. Eagle Paper, 726 F. Supp. 3d at 550 ("Although [a defendant's] alleged conduct may violate a duty imposed by . . . [a] restrictive covenant, that same conduct could also violate an independent common law duty."). Accordingly, the motion to dismiss Count V is denied.

### F. Count VI: Virginia Computer Crimes Act

Count VI alleges that Mr. Winchester's "intrusions into Sysco's protected computer system" violated the Virginia Computer

Crimes Act ("VCCA"). Compl. ¶ 186. Mr. Winchester identifies just one "problem" with Sysco's pleading: Sysco's putative failure "to identify anywhere within the Complaint any 'lost profits'" or "other form of damages relevant to the" VCCA. ECF No. 71, at 19.

The VCCA provides that "[a]ny person whose property or person is injured by reason of a violation of" the statute "may sue therefor and recover for any damages sustained." Va. Code § 18.2-152.12. "Without limiting the generality of the term," the statute specifies, "'damages' shall include loss of profits." Id.

Under this broad provision, Sysco has "plausibly allege[d] statutory injury." Hately v. Watts, 917 F.3d 770, 781-82 (4th Cir. 2019). The amended complaint alleges that Mr. Winchester's intrusions into Sysco's computer network contributed to Sysco's loss of at least two customers, which together accounted for approximately $1,280,000 in annual sales. Compl. ¶¶ 71-73, 97, 188; cf. Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc., 18 F.3d 260, 264 (4th Cir. 1994) (describing "lost customers and lost revenue" as "distinct and independent injuries").

Mr. Winchester objects to Sysco's allegation of "lost revenues" as opposed to "lost profits." ECF No. 76, at 11 (quoting SSS Enters., Inc. v. Nova Petroleum Suppliers, LLC, No. 1:11cv1134, 2012 WL 3866490, at *7 (E.D. Va. Aug. 30, 2012)). But the VCCA does not "so limit the meaning of 'any damages.'" A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 647 (4th Cir. 2009)

(quoting Va. Code § 18.2-152.12). Even if it did, Sysco's VCCA claim could still proceed, since "it is reasonable to conclude that a claim for lost profits is implied in the allegation of revenue loss." Eigles v. Kim, No. 1:07cv2223, 2011 WL 3651802, at *13 (D. Md. Aug. 17, 2011). Mr. Winchester's motion to dismiss Count VI is denied.

### G. Count VII: Tortious Interference with Contract

Count VII alleges that PFG has knowingly "induced" Mr. Winchester "to breach and to continue to breach" the PCA's confidentiality, non-solicitation, and non-competition provisions "by employing and paying him" and "directing him to perform, or ratifying his performance of, work which violates the PCA." Compl. ¶¶ 190, 194. PFG's "tortious interference" has allegedly "caused Sysco to suffer damages" and lose "all business opportunities Sysco employed Winchester to develop." Id. ¶¶ 195-97.

A claim for tortious interference with contractual relations requires "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." Schaecher v. Bouffault, 290 Va. 83, 106, 772 S.E.2d 589, 602 (2015) (citation omitted).

PFG begins by challenging the adequacy of Sysco's pleadings as to the second of these elements: "PFG's alleged knowledge." ECF No. 69, at 22. Sysco claims that PFG knew of the PCA's confidentiality and non-solicitation restrictions "at least as of" October 23, 2025, when Sysco "sent a cease and desist letter to Winchester and PFG" invoking those restrictions.[14] Compl. ¶¶ 76, 192. PFG allegedly learned of the non-competition restriction even later, on November 14, 2025, when PFG received Sysco's initial complaint.[15] Id. ¶ 193. As Sysco seems not to dispute, these dates limit its claim. Sysco thus underscores its allegations concerning PFG's conduct after these dates in order to satisfy the remaining elements. See ECF No. 74, at 30-32, 30 n.4.

The third element, intentional interference, may be satisfied if PFG knew that "interference [wa]s certain or substantially certain to occur as a result of [its] action," even if PFG did not "act for the purpose of interfering with the contract or desire it." DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 146, 670 S.E.2d 704, 707 (2009) (citation omitted). Sysco's allegations clear that hurdle. After receiving the cease-and-desist letter, PFG would have known that inducing Mr. Winchester

---

[14] Sysco also suggests that "PFG, as Sysco's direct competitor, should have been well aware of" these restrictions because "Sysco and its competitors routinely" impose them on "their sales employees." Compl. ¶ 192. This theory does not rise "above the speculative level." Lokhova v. Halper, 995 F.3d 134, 148 (4th Cir. 2021) (quoting Twombly, 550 U.S. at 555).

[15] It appears that PFG was actually served on November 13. ECF No. 16.

to procure, disclose, or use for solicitation any of Sysco's confidential information would interfere with the PCA. Nevertheless, the day after PFG received the cease-and-desist letter, while Mr. Winchester was a PFG employee, Mr. Winchester accessed "product lists," "product details, purchase volume, and invoices" pertaining to one of Sysco's customers via Sysco's Shop system. Id. ¶ 78. The following month, the customer in question allegedly informed Sysco that it would be "moving part of its business to PFG" because "PFG had presented it with prices below Sysco's." Id. ¶ 80. PFG protests that these allegations are "simply not true." ECF No. 77, at 12. But in ruling on a motion to dismiss, the Court must accept them as such. Turner, 930 F.3d at 644. With all reasonable inferences drawn in Sysco's favor, these allegations suffice to state a claim of tortious interference with the PCA's confidentiality and non-solicitation restrictions.

Sysco's allegations of intentional interference are also sufficient with respect to the non-competition covenant. PFG's "preliminary" assertion that a "non-competition obligation cannot support a tortious interference with contract claim" is incorrect; this Court has held the opposite. See Depuy Synthes Sales, 2014 WL 1165852, at *4-5, 5 n.2. In this case, Sysco claims that PFG, a Sysco competitor, continued to employ Mr. Winchester to "servic[e] customers for PFG in the narrow geographic area" in which "he previously serviced Sysco customers" even after PFG

learned that Mr. Winchester's employment was certain to breach his non-competition obligation. Compl. ¶¶ 62, 160.

Finally, Sysco adequately pleads the fourth element, "resultant damage." Schaecher, 290 Va. at 106, 772 S.E.2d at 602. Sysco alleges that on November 19, 2025, it learned that a customer "was moving part of its business to PFG" because "PFG had presented it with prices below Sysco's." Compl. ¶ 80. This customer's account had been "managed by Winchester while he was employed by Sysco." Id. ¶ 78; see also Glob. Tel*Link Corp. v. JACS Sols. Inc., 708 F. Supp. 3d 784, 802-03 (E.D. Va. 2023) ("To state a claim for tortious interference, [a plaintiff] need only plausibly plead that it suffered some damage, no matter how slight.").

Because Count VII satisfies each of the elements PFG challenges, the motion to dismiss Count VII is denied.

### H. Count VIII: Business Conspiracy

Count VIII alleges that Defendants together violated a Virginia statute prohibiting conspiracies to "willfully and maliciously injur[e] another in his reputation, trade, business or profession." Va. Code § 18.2-499; Compl. ¶ 199. PFG and Mr. Winchester each move to dismiss this claim.[16] ECF No. 69, at 24-26; ECF No. 71, at 20.

---

[16] Mr. Winchester "adopts" and echoes PFG's arguments and notes his recurrent view that Sysco has failed to allege damages, ECF No. 71, at 20 & n.4, which the Court again rejects for the reasons already explained, supra note 11.

To begin, PFG contends that "business conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.'" ECF No. 69, at 24-25 (quoting Gov't Emps. Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004)). Of course, "mere conclusory statements" are insufficient. Iqbal, 556 U.S. at 678. But that is the general Rule 8 pleading standard. See Aimbridge Hosp., LLC v. Provident Grp. - Radford Props., LLC, No. 7:24cv262, 2024 WL 3534150, at *8 (W.D. Va. July 24, 2024). The heightened "particularity" standard of Rule 9(b) specifically applies to allegations of "fraud or mistake" and makes no reference to "conspiracy." Id. (quoting Fed. R. Civ. P. 9(b)). Because Sysco "does not allege fraud as the underlying wrongful act" in this case, Sysco need not "plead its business conspiracy claim with particularity." Id. at *9; see Harrell v. Colonial Holdings, Inc., 923 F. Supp. 2d 813, 825-26 (E.D. Va. 2013).

PFG next posits, correctly, two principles that limit the scope of Sysco's claim. See ECF No. 69, at 25. First, "a conspiracy merely to breach a contract" is insufficient; instead, the conspiracy must have implicated some "independent duty arising outside the contract." Station #2, LLC v. Lynch, 280 Va. 166, 174, 695 S.E.2d 537, 541 (2010). Second, a conspiracy between an employer and its employee is "a legal impossibility because a principal and an agent are not separate persons for purposes of the conspiracy statute." Charles E. Brauer Co. v. NationsBank of

Virginia, N.A., 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996). Based on these principles, PFG argues that Sysco must allege "a combination (that is formed prior to Winchester's employment with PFG) for unlawful purpose or unlawful means arising from an independent duty (not contract) owed to the plaintiff." ECF No. 69, at 26; ECF No. 77, at 13 n.3. Sysco says it has done "just that." ECF No. 74, at 33. The Court agrees.

Sysco alleges that Mr. Winchester met more than once with a PFG representative; accepted an offer of employment from PFG; and disclosed Sysco's trade secrets to PFG, all before he became a PFG employee. Id. ¶¶ 61-63, 67. These allegations are "placed in a context that raises a suggestion of a preceding agreement," Twombly, 550 U.S. at 557, including a "history" of PFG "systematically targeting and soliciting Sysco's employees" and obtaining Sysco's confidential information to benefit PFG at Sysco's expense. See Compl. ¶¶ 1-2, 5-6, 28-35. Together, these allegations make plausible the requisite "combination." Dunlap v. Cottman Transmission Sys., LLC, 287 Va. 207, 214, 754 S.E.2d 313, 317 (2014) (citation omitted).

Sysco also adequately alleges "that the conspirators acted with legal malice, i.e., 'intentionally, purposely, and without lawful justification,'" in violation of a duty independent of the contract between Mr. Winchester and Sysco. Dunlap, 287 Va. at 215, 754 S.E.2d at 317; see also Multi-Channel TV Cable Co. v.

Charlottesville Quality Cable Operating Co., 108 F.3d 522, 527 (4th Cir. 1997) (explaining that it is sufficient if just "one party" acted "with legal malice," even if "the co-conspirator" did not). Sysco claims that PFG, together with Mr. Winchester, tortiously undertook "to undermine Sysco's business relationships and to expand [PFG's] own." Compl. ¶ 64; id. ¶¶ 61-72, 199-201; see Dunlap, 287 Va. at 218, 754 S.E.2d at 319 (holding that "tortious interference with contract and tortious interference with business expectancy each constitute the requisite 'unlawful act' to proceed on a business conspiracy claim"); CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 26-28, 431 S.E.2d 277, 280-82 (1993) (finding a conspiracy claim "sufficiently state[d]" based in part on the defendants' alleged "plot" to breach their fiduciary duties to the plaintiff).

Even applying PFG's limiting principles, see ECF No. 69, at 25, the amended complaint plausibly states a business conspiracy claim. The motion to dismiss Count VIII is therefore denied.

**I. Count IX: Computer Fraud and Abuse Act**

Count IX alleges that Mr. Winchester violated the federal Computer Fraud and Abuse Act ("CFAA") by accessing Sysco's Shop system without authorization. Compl. ¶¶ 208-11. Sysco also contends that PFG is liable for this conduct "under principles of respondeat superior," since Mr. Winchester accessed Shop without authorization while "performing PFG's business." Id. ¶ 212. In

their motions to dismiss, Defendants argue that this claim "necessarily fails because Sysco has not alleged — and indeed cannot allege — the requisite 'loss' required to state a claim under the statute." ECF No. 69, at 17-18; ECF No. 71, at 21.

"Any person who suffers damage or loss by reason of a violation of" the CFAA "may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The statute defines "loss" as "(1) 'any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense,' and (2) 'any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.'" United States v. Umeti, 167 F.4th 687, 697 (4th Cir. 2026) (quoting 18 U.S.C. § 1030(e)(11)). The Fourth Circuit has construed this definition to cover "costs incurred as part of the response to a CFAA violation, including the investigation of an offense." iParadigms, 562 F.3d at 646.

Here, to allege such loss, Sysco claims it

> has spent considerable time and expense investigating the extent of Winchester's Shop access and activity and taking legal action against him, which has taken many hours of valuable time away from the day-to-day responsibilities of Sysco's employees and caus[ed] losses well in excess of $5,000.

Id. ¶ 213. This allegation fails to satisfy the statutory loss requirement because it includes, without delineation, "non-qualifying litigation costs."[17] ECF No. 69, at 18.

"Although the CFAA entitles Plaintiffs to consequential damages, this does not include costs associated with the prosecution of the CFAA action — only those costs 'incurred as part of the response to a CFAA violation.'" AMF Bowling Centers, Inc. v. Tanase, No. 3:23cv448, 2025 WL 1132327, at *3 (E.D. Va. Apr. 16, 2025); see InfoTek Corp. v. Preston, 626 F. Supp. 3d 885, 894 n.13 (D. Md. 2022) ("Fees paid for investigating an intrusion are CFAA-qualifying losses under the CFAA, but fees paid to assist in litigation do not count toward the $5,000 threshold."). Thus, to adequately allege at least $5,000 of CFAA losses, Sysco may not include the "time and expense" of "taking legal action against" Mr. Winchester. Compl. ¶ 213. Yet Sysco intertwines litigation and investigation expenses without any allegations distinguishing the portion of the total loss to which each corresponds. Id.

As such, the amended complaint does not "contain sufficient factual matter, accepted as true," from which to infer that Sysco's qualifying losses alone, without litigation expenses, total at least $5,000. Iqbal, 556 U.S. at 678; cf. Ground Zero Museum

[17] Defendants argue that CFAA "loss" is limited to "technological harm — such as the corruption of files." ECF No. 69, at 19 (quoting Van Buren v. United States, 593 U.S. 374, 391-92 (2021)). Sysco advances the broader definition articulated in iParadigms. ECF No. 74, at 28. The Court need not resolve this issue here because neither definition embraces litigation costs.

Workshop v. Wilson, 813 F. Supp. 2d 678, 694 (D. Md. 2011) (reasoning that "losses greater than $5,000 in one year" could not be inferred without "mere speculation or guesswork" from an assertion of loss "over a time period greater than one year"). Without a well-pleaded allegation of "a qualifying 'loss' of at least $5,000," In re Cap. One Fin. Corp., No. 1:25cv23, 2025 WL 1570973, at *12 (E.D. Va. June 2, 2025), Sysco's CFAA claim may not proceed.

## V. CONCLUSION

For these reasons, Defendants' motions to dismiss, ECF Nos. 68, 70, are **GRANTED IN PART** with respect to Count IX, which is **DISMISSED** as to both Defendants. With respect to all other counts, the motions to dismiss are **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ [signature]
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 18, 2026